22-5049. Ms. Keeble, you may proceed. Thank you your honor. May it please the court, counsel. My name is Shira Keeble and I represent Mr. Romannose. According to the government's evidence, Mr. Romannose persisted in the unwanted and offensive sexual touching of MP in the minutes before he engaged her in a non-consensual and illegal sexual act. But the government did not present evidence that this misconduct rose to the level of aggravated sexual abuse by force. And most critically, the government's proof as to force was deficient in this case. It breaks no new ground to say that force as used in this particular statute is actual force sufficient to overcome, injure, or restrain. Every circuit, including this court, that has these types of cases has agreed that that is the proper definition of force. You know, overcome is a difficult word. It means overcoming somebody else's what? Their preferences, their strong values, their what? I mean, she, the victim here, clearly did not want to engage in sexual activity. So the fact that she didn't complain suggests that her initial desires were overcome. And yet, they're really, I mean, this doesn't have a case of obvious force. It's a hard case about what overcome means. Your Honor, I think that you've really honed in on the question here. Her initial desires were overcome, but that's going to be true in every single case of a non-consensual sexual act. The person's desires are being overcome. And so then how do you cope with that? That's exactly why this is such a hard case. Yes, Your Honor. And luckily, this court has a lot of case law to fall back on. So if you want to look at, for example, restraint. Restraint can also mean a lot of things. It can just mean any physical contact that's restraining. But all circuits, again, have rejected that definition and said, no, restraint must be sufficient restraint that it actually prevents the person from escaping the sexual act. So we're not just talking about an unwanted or offensive touching here. The thing that is inherent in all unwanted or offensive sexual acts is that there will be unwanted or offensive touchings. Don't we have restraint here, though? I mean, she's in the back seat with a large adult male, 30 years older, and the car's moving. There's nowhere for her to go. So I think overcome and injured are other elements. But you're not going to concede restraint here, or would you? No, I'm certainly not going to concede restraint, Your Honor. I think I discussed this in detail in my reply brief, that the defendant has to use restraint. And it has to be his actual force. So this court has discussed how it has to be an actual touching. And in Hawley, in particular, it talks about that power disparities and fear come under this other statute, the intermediate offense of sexual abuse, that that's a different crime. And so we're talking about him using actual force. And what we don't hear is him using actual restraining force. We have, yes, a larger person and a somewhat smaller girl who are in the back seat of a car. But her caring, protective father is in the front seat. Her stepmother is in the front seat. So this is not a kidnapping case. This is not an implied kidnapping case. And there's simply nothing in any circuit that even remotely comes close to this. The restraint cases, generally speaking, involve someone getting on top of the other person. And not only that, they almost all, I don't think it necessarily has to, but it almost always involves a person saying, as it did in Reyes-Pena, I tried to push him off and I couldn't. But certainly some type of evidence that they were actually unable to escape the sexual assault. And here, escape doesn't mean taking off your seatbelt and it means calling out. Yeah, I mean, that is a mystifying fact here. But at trial, she had an explanation for not crying out. She froze and who knows how victims are going to react. But she did push him away, pushed his hands away. And he rebuffed that and kept advancing. Why isn't that some version of overcoming her will? She's stuck with him, so why isn't that fit within a common understanding of the word restraint? Your Honor, again, that is the only physical contact, actual physical contact that precedes the sexual act that the government points to. Isn't that enough though? It's him rubbing her leg. I think it's real important to look at the testimony here. There's no testimony about this, I push and push and push and push. There's no tug of war. There's no, I was unable to get him temporarily even to stop what was happening. Her testimony is he's rubbing her leg. I hope we can all agree that that's an offensive touching. It is non-consensual, but that it is not force. Well, didn't she try to push the hand down? She testified that she pushed his hand away and he came back. And so then the question is whether persistence is a legitimate use of force. The persistence, just the cumulative persistence. To me, that's what this case is kind of about. I think, again, Your Honor, that's a good question. I think this does raise that question of persistence. But again, you're going to always have that in these cases. This is not a common law battery. We're not talking about you either don't touch someone or you do. We're talking about non-consensual sexual act, a different crime that is on a practical level always going to be preceded by multiple unwanted touchings. And if the person clearly doesn't want it, like in Fool Bear, the persistence doesn't matter. That's not enough force. If the person says, I don't want this, the persistence still, it's not any different. It's still the same quantum of physical force. It's still just an offensive touching. And so here, she communicates her non-consent in a number of ways. She tosses a pillow at him. She moves her body away. She moves his hand away. But what we're looking at here, what Congress made very clear, both in the language of the statute and in the legislative history, and what all the courts, again, have specifically held in the case law, is that we're interested in his conduct and whether he actually uses force. So I would actually draw this court's attention maybe to, and this is not in my briefs, but just again by analogy to this court's cases about statutory rape in the context of the residual clause, where this court said, it's always a substantial risk that physical force will be used to ensure a child's compliance. And that was the reason that this court held that even statutory rape was a crime of violence under the residual clause. So Coronado Cervantes and Monroe are two particular cases, and I'll file an update with the court with those cases. You always have this specter of violence, even with factual consent from someone this person's age. You always have a child who's going to have difficulty saying no or doing no and might freeze up. But you don't have any cases that say that that takes us all the way from sexual abuse of a minor to sexual abuse to aggravated sexual abuse by force. We're here on a sufficiency of the evidence also. It's a pretty high bar for the defense. And I guess your argument is, under any reasonable interpretation of her testimony, that there wasn't aggravated force. What would aggravated force look like in this case? What other additional piece of evidence would have gotten over that bar? With the parents in the front seat, I mean, there really aren't many cases like that. I think the only case that I saw that had a kind of protective presence, which is a holding down the person's leg. And when the grandfather tried to come in to say, what is all that noise, they covered the person's mouth and pulled a blanket over to conceal her. And altogether, that was considered sufficient force. Are you suggesting that she had some obligation to cry out? Absolutely not, Your Honor. Again, what she does provides us only with information. It can't satisfy the element. So she can say no zero times or a hundred times. She can push his hand away zero times or a hundred times. But so long as he is not escalating in force, in his physical approach to her, he's not escalating beyond rubbing her leg and then engaging in the sexual act, which is what the testimony is here, you don't have force. Now, could the government have argued placing her in fear, which would have been a lesser offense? I mean, they could have tried, but that wasn't her testimony. She didn't say, I was afraid, which, again, is in every fear case and essentially every one of the physical force cases. She doesn't say that. And as we have, again, in Full Bear, the Eighth Circuit says, you know, sufficiency of the evidence has this really normally easy standard for the government to meet, but we're not putting words in her mouth. We're not going to take this evidence and add something to it that wasn't there. So, again, the only actual physical contact that the government points to that precedes the sexual act is testimony that Mr. Romanos rubbed her leg. Yes, she pushes his hand away, and then he comes back and he rubs her leg higher. And we don't know exactly how many times that happened. It was more than once, and every single time it was more offensive than the time before. But there's no testimony that you could draw a reasonable inference from that it becomes more physically forceful and such that it satisfies the force element. What about the physical size disparity? Can't we infer from that some element of, you know, this power imbalance that would allow a jury to infer that, you know, he overcame her will? Your Honor, I think that the power imbalance, just like her actions, is information that helps us, right? Like, it matters if, like, a 50-pound person gets on top of me versus a 300-pound person. That's going to make a really big difference to know how much force they were using if you know that I'm only 4'11". That makes a difference. It's information that helps you understand how much force was actually being used and also probably is useful to the causation element. I have a little trouble with the disparity of size, which is one of the big factors here, really, because that assumes that that disparity would be used to morph into actual conventional force. And that risk really wasn't present here. Because of the people in the front seat in the car, he could have been a lot bigger, and full-bore use of that force just wasn't a realistic prospect, because had it been invoked, clearly the people in the front seat would have discovered what was happening and stopped it. I think that's right, Your Honor. So, again, I'm saying that it's never enough only to have that or to have that alongside offensive touchings. I think Hawley has a long discussion of what constitutes placing someone in fear, and it's clear that would be the fear side of things. I think Your Honor is right that here, it certainly, on these facts, wouldn't matter. And, Judge Tampich, I think I didn't really answer your question of what more could have there been. I mean, you could have had someone who maybe had an actual weapon and threatened to use it or made an indication that they might use it if the person calls out to these protected people in the front seat. I mean, we don't have that here. I'm not saying you need a weapon in cases like this. Not at all. Isolation can matter. All of these different things give you information about what it is that the defendant did, but the focus of the statute is on the defendant, and here we simply don't have more than offensive touchings followed by a sexual act. If the facts were different, that this was a parked car and no parents in the car, so the two of them alone in a parked car, would that be a situation of aggravated force? Your Honor, I think that it would maybe be a harder case, but probably not since we still don't have testimony of more force that she froze because of fear, and because we have this separate fear statute that's different, and maybe there would be better evidence of fear in that case. Maybe if you have testimony that he's coming back using more physical exertion, not merely going higher on her leg, being much more offensive and more sexual each time, you do have, I'm sorry, I don't remember which case it is from our briefs, in the Eighth Circuit, a case where they've driven someone to what appears to be a pretty isolated pier on an Indian reservation at night, and I think in that situation, yeah, all the facts are going to be analyzed differently because you have different information, but again, here, I think this is extremely unique. Your Honors are honing in on all the factors in this case that make this case so different and why we are arguing that this is not aggravated sexual abuse by force. If I may reserve the remainder of my time. You may. Thank you. May it please the Court. Thomas Duncan for the United States. When a 220-pound man cornered a 12-year-old in the backseat of a moving truck and stuck his fingers into her vagina, after physically wearing down the 12-year-old's resistance during the course of a 40-minute-long assault, a rational jury could have found that that was a sex act procured by force. So the only persuasive verb that I heard there was the wearing down. What case law is there that a sub-amount of force that doesn't rise to the level of force by its sheer persistence gets elevated up to more than the required level of force? There isn't, Your Honor, because that's not the standard we're articulating here. Well, it is. I mean, it might very well be, because I don't see any sudden incidental event of force that's really there. Right. Well, I think it's important to understand that force doesn't have to be one action. And that's why I'm asking what law you have that says that just as a mathematical, let's say force has to be a level 7 and somebody has a 1 or 2, not what you would normally expect as force, but if it's 2 now and 2 more and 2 more and 2 more and 2 more, does it get cumulative or are they simply repetitive? No, because under the case law, a level 1 is force for the purposes of 2241A1. And I have some examples. In Willie, for example, there was what I imagine this court would consider a level 1 or a level 2, trying to adopt your numeric system. There was not a lot of physical force and certainly not a lot of what anyone would consider offensive or sexual physical force outside of the act of penetration. But he moved the daughter from a physical zone of safety that she had created. It was in a one-room Hogan, so the sister was nearby on the couch and, in fact, saw a lot of what happened. So there was a protective presence there. There's also a protective presence in Eagle Thunder, which is the 8th Circuit case. So that's another case that shows you don't have to shriek out or seek the help of someone like a police officer who was present at the scene in Eagle Thunder. But in Willie, he picked her up, moved her from a zone of safety, and there was a disparity in size and coercive power that is a lens through which the jury can view the force, the physical acts that the defendant used to help them interpret whether under these circumstances that was force for the purpose of the statute. You know, under that view, every case is aggravated sexual abuse. Not so. I mean, we need an aggravating factor here, which is force and violence. And, you know, it seemed like a lot of those... Judge Ebell's level one is, you know, every case is going to have a physical disparity involving, you know, an adult and a young child. Well, and that concern was addressed by this court in Holly. There's always going to be a disparity in coercive power between a sheriff and the five inmates that the sheriff sexually assaulted in Holly. But that doesn't mean that it's not a fair inference for the jury to make that when a sheriff, and there were varying levels of force used in Holly, but for several of the victims, all that it says in the record is that the sheriff took me into his office and forced me to have sex with him. So it's almost this self-defining standard. But it says he had his gun on or near him, and he was the sheriff. And some of these victims, in fact, admitted that they had sex with the sheriff partially because of the benefits that the sheriff would give them once they had sex with him. That doesn't mean that the sex was not coercive and that the sex was not force under the meaning of 2241A1. In the Louk case... I know, but Congress came along and passed 2242 to, you know, address that exact scenario. Respectfully, not, Your Honor.  that 2242-3 was meant to close some sort of loophole. That's not what the statute was meant to do. Closing the loophole was closing the law enforcement consent loophole such that even assaults with consent of a detainee would be now chargeable as simple non-consensual sexual contact. But the statute, the statutory legislative history, and the statutory structure support that Congress wanted to put very clear barriers on what type of fear or what type of threats would suffice for the offense to be defined as aggravated. Congress chose actively not to put any such qualifiers on the amount of physical force that would qualify an offense as aggravated. And the Louk case is instructive in this regard. Louk tried to point to other cases and say, well, in those other cases, there was more evidence of violent physical force. And for this to be differentiated from the misdemeanor of... It was sexual contact in Louk. But for this to be differentiated from the misdemeanor of non-aggravated sexual contact, there has to be more force. That's the difference between the two. The Second Circuit in Louk said no. The difference between the two is that there is force at all. I think that's a persuasive argument, and I'll be eager to hear your response when you come back on that. But doesn't that suggest that every non-consensual sexual encounter is going to fall under this statute? Because if it's non-consensual, something persuaded the victim to give in. Something must have. And the only thing it could have been, unless it's bribery or some affirmative benefit, like the sheriff-inmate situation, has to be presumed force. So that would just jump you up to where you could charge this pretty nearly every time. And you could make the same argument for every time there's a sheriff or a law enforcement officer, you could charge that it's force. And that's the argument that Holly made. This is unfair to me, because every case where I rape one of my inmates, you're going to say that it's aggravated sexual abuse. And the court said, guess what? It is. And the fact that force can be inferred from despair... If you're answering my question, yes. You're saying the government can charge aggravated sexual assault in nearly every case if it chooses to do so. With a very, very important caveat, which is that the facts have to support it. Sure, but the facts meaning it was non-consensual. Something persuaded the victim to allow it, assuming that she wasn't resisting all the way through the entire event. And unless you've got some incentive, some payment, affirmative payment, it had to be a negative thing. And the negative thing had to be force. No, not had to have been force. This court still can and still does determine whether the jury's use of that inference was reasonable based on the facts. So you're always going to start with a baseline of, here are the facts, here's what the defendant did. I believe it was the Ninth Circuit case, Archdale. He held the victim's arm above her head and he got on top of her. That's it. Those are the facts in terms of his physical actions. His size here. Yes. I have trouble saying, even though I know we've got a Tenth Circuit case, I have trouble saying his size equals use of force. I think I would say his size equals the potential to use force. But you still have to get that potential actuated before the statute is actuated. And I agree 100%, which is why I disagree with the way the appellant characterized our argument in his reply brief. Saying that force can be inferred by the jury from things like a disparity in size or disparity in coercive power is not the same as saying that force equals a disparity in size or the reverse. It works similar to the way some inferences work in drug cases. If a defendant is caught driving a car where there are drugs in the car, the jury is often instructed. You may infer knowledge, which is an element the government has to prove beyond a reasonable doubt, but can be inferred from circumstantial evidence. You may infer knowledge based on the defendant's sole possession of the vehicle. Now, in many cases, the jury may use that inference as a filter or a help in how it sees the evidence of whether the defendant had knowledge. But if there's a specific factor or factors in the case that make that inference unreasonable, the jury cannot rationally use that inference that way. That is squarely presented in this case. If all you knew was that he was a whole lot bigger and stronger than she was and there was nothing else, they were the two of them together in a parked car and nobody else around, you would say, okay, that inference the jury can consider. But here, because the parent and the stepmom were in the car together, or the stepdad and the mom, you can't reasonably infer that that force was used. In fact, we've got a reason to believe it wasn't used. If it wasn't used, then it wasn't a use of force, and I think it drops out of the equation. Then you really have nothing left. Well, let me unpack that. So, first of all, the presence of the father, who she didn't normally live with, but who was a buddy with Mr. Romanos, who the father was in the front seat trying to sleep, and the aunt of the abuser. Those were the two people in the front seat in this truck in a strange state in a place going to see a tribe that wasn't her own going back to her father's house. It would have been reasonable for her to fear that if she had said something, her father might not have believed her. Her father might have believed the adult. But it would have stopped the event. I think it would have reasonably stopped the event. And I think an adult like you or I probably could have rationally gone through that thought process, even with a man gradually and more and more forcefully getting his hand up our shorts. But for a 12-year-old, it's reasonable to infer that that, coupled with all the physical actions he took during the 40-minute attack, were enough to be force. It might not have been force if she was 40. It might not have been force if she had served in the Army, too, and was super strong like he was. But the jury is allowed to take his physical actions and look at those physical actions through the lens of the fact, wait a minute, this is a 12-year-old. And on the other side is a 40-year-old who's 6'1 and 220 or 225 pounds. So when she says, I kept trying to push his hand away, but he kept going higher, that is evidence that the jury could reasonably have taken as eventually he overcame her will because he was stronger than her. She couldn't resist physically. That goes back to my question about the persistent use of relatively minimal force might have itself a wearing down or an inevitability to it that could be a use of what otherwise would be not a threshold level of force. So there's a couple of key things in there. And I just want to step back because I understand, Judge Ebell, you are understandably worried about a standard that says minimal force. But I just want to remind the court that the statute says force and that legislative history is such that Congress indicated that it didn't want to require victims to have to show excessive force. So there's force and then there's not force. This concept of minimal force might be a close question in some cases. And you might well look at the facts and say, I'm not sure if I were the jury, I would have found that this was a sex act procured by force. But that is for the fact finder to determine in the first instance. And this court is limited to, was that a rational choice by the fact finder? And here, the other thing I just wanted to say in response to your concern, Judge Ebell, is you have to look at the whole car ride in its totality and the circumstances surrounding that. You can't just fly spec and pick elements and say, well, this particular physical action wasn't force and this particular physical action wasn't force and this particular physical action wasn't force. And so, therefore, there wasn't force under 2241. There were a number of physical actions that preceded the sexual act here. When you say there's no de minimis or minimal force, the statute does conclude, I think, that the force has to have been sufficient to obtain the sexual act. It's not just, it doesn't make it illegal to have a sexual act in conjunction with force. It says a sexual act by using the force. So you have to come up with a causation here that the force was sufficient, e.g., that it wasn't de minimis, which would mean insufficient and inconsequential. You have to prove that it was consequential. And I see that my time is up, but may I answer? Yes, please. And I've got a question, too. So, first of all, I want to assure the court I am not espousing a standard of de minimis force is enough. I'm just pointing out that the differentiation in the statute between aggravated and non-aggravated is not de minimis force and large amounts of force. It's force or caused by force, brought about by force, or not brought about by force. And the second... It's effective force versus ineffectual force. And to answer the question that you raised, sufficient to overcome, that's an amorphous question. What does that mean? Well, Reyes-Pena and a number of other cases say that that's force sufficient to overcome the victim's will. Not sufficient to injure her or force sufficient to restrain her, because those are the other prongs of what force can be. But if you're under overcome, it's force sufficient to overcome her will. And the physical actions here, in addition to the repetitive and progressively closer and closer to her vagina attacks on her leg, which she eventually was unable to fend off, there were actions that started passive, progressively got more active as he grabbed her breast under her bra, as he grabbed her hand and put it on his penis and she had to jerk it away, and then as he started this attack of her leg, which wasn't just persistent, it was progressive, and the jury was allowed to infer from the circumstances, from the size, from the coercive power, that the physical actions he took in order to make this sex act happen were sufficient to be forced under the statute. As I understand your argument, it seems to me that Fulbert was wrongly decided. Do you agree with that? I think Fulbert was very, very close. And I think Fulbert is an example of perhaps the Eighth Circuit had just seen too many cases where it was close. Like, I see some Fourth Amendment reasonableness cases where I think, my goodness, that seems like it was close, and so shouldn't that have been enough to constitute reasonable suspicion? But sometimes the court says, well, all right, fine. Some amount of force, fine. But really the difference in Fulbert was that the standard articulated by the government was so amorphous, get the better of the victim, that it allowed a finding of force based on emotional force or financial force. But Fulbert said force has to be actual force. And so that's the standard. Actual force, which we have here, that procured the sex act. And so whether that is the thing that procured the sex act is always going to be a difficult question for a jury. It's always going to be a question open to interpretation based on the non-expert and non-legal way that the victim describes what the defendant did. And it can be inferred in this case from a number of factors, including the disparities in size and force. All right, counsel. Thank you. Paul, could you give Ms. Keyville two minutes? Thank you, your honors. The government is correct that we have two levels of threat listed in the statute and but one level of force. And that's because this lower level, this thing that they call level one force and which I call an unwanted touching, is inherent in every single one of these acts, every single one of these crimes. And so when Congress says, oh, we're only creating one force crime, it's this aggravated sexual abuse by force that requires sufficient force to overcome, injure or restrain. In Fulbert, there was an unbelievable amount of persistence. There were years of rape. There was past physical assaults. And that persistence was not enough because overcoming someone's will on an emotional level, them saying, I just can't, won't, don't know how to do anything about this, is not what this statute is talking about. In Luck, it was a stranger in a tunnel case. The argument essentially was she did get away, so I didn't use force sufficient to restrain. And the holding was, well, she didn't get away until you'd already done some things. And so that was force sufficient to restrain, at least while you were doing those things. The government really wants everything to fall into knowledge and causation. And we have no meaning on this element of force. And that's not what the cases in this circuit or anywhere else has held. We're not talking about overwhelming emotionally. We're talking about overcoming someone physically. Here, what the government has is they have someone who ignored her no. He ignored her saying no, indicating no. He ignored her pushing his hand away. But he did not increase his amount of force. He didn't use what in this statute is defined as force. He persisted in the unwanted, very offensive sexual touching of MP. It culminated in a non-consensual sexual act. And it is simply not the crime that he was convicted of in count one. Hawley, briefly, was a jury instruction case when it comes to force. There was no factual analysis of the force in the case. All of the factional analysis turned on the threat and fear prong where there was a jury instruction error because this was a civil rights violation case that was charged in the alternative under the two different types of aggravated sexual assault. And almost every count in that was eventually overturned because there was insufficient evidence to say that the error on threat was harmless. There just wasn't an analysis of the facts. And when you get into the facts of this case, we have a real serious problem that requires this court to reverse. Appreciate the fine arguments this morning. You're excused. The case is submitted.